UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RUTH HEALEY; MARCIA LUTWIN; | : | |
| LINDA WIERDA; JANE KOZLOWSKI; | : | |
| MARGARET A. WALZ; ROGER | : | |
| AUDETTE; MARION MORGAN, | : | |
| by her next friend, DOROTHY M. | : | |
| HILTZ; JULIA M.CULVER, by her | : | |
| next friend, THE REVEREND | : | |
| HORACE MITCHELL; and BERTHA | : | |
| CHIPLIN, by her next friend, | : | |
| ALFRED J. CHIPLIN, SR.; MADALYN | : | |
| ROVNER; ROLAND COTE; FLORENTINA | : | |
| CALDERON, by her next friend, | : | |
| EVA MORENO; HELEN BAGWELL; | : | |
| MAXINE MARMOR; and KATHERINE | : | |
| WATTS, individually and on | : | |
| behalf of all others similarly | : | |
| situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 3:98CV418 (DJS) |
| | : | |
| MICHAEL G. LEAVITT, SECRETARY | : | |
| OF THE UNITED STATES DEPARTMENT | : | |
| OF HEALTH AND HUMAN SERVICES, | : | |
| | : | |
| Defendant. | : | |

MEMORANDUM OF DECISION

This case is a nation-wide class action brought on behalf of
recipients of home health care benefits from Medicare seeking
"meaningful notice and appeal rights when their home health
benefits are reduced or terminated," (Compl., ¶ 1), by way of
declaratory and injunctive relief against the Department of
Health and Human Services.  Plaintiffs have prevailed on their
claim that the Medicare statute requires written notice, and an

explanation of the beneficiaries' rights to appeal, to be sent to home health care beneficiaries whenever a reduction or termination of their benefits is imminent, irrespective of the reason for the reduction or termination of benefits.   Now pending is plaintiffs' motion for attorneys' fees and costs (dkt. # 175).  For the reasons that follow, plaintiffs' motion (dkt. # 175) is **GRANTED in part** and **DENIED in part**; attorneys' fees and costs shall be awarded in an amount to be determined pursuant to the court's instructions set forth herein.

## I. DISCUSSION

In their application, plaintiffs seek attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), codified at 28 U.S.C. § 2412.  Congress passed the EAJA in an effort to remedy "the economic deterrents to contesting governmental action[,]" which are "magnified in [cases where individuals are forced to defend against unreasonable government action] by the disparity between the resources and expertise of these individuals and their government."  H.R. Rep. No. 96-1418, at 5-6, <u>reprinted in</u> 1980 U.S.C.C.A.N. 4984.  Thus, under the EAJA, "a party does not have to choose between acquiescing to an unreasonable Government order or prevailing to his financial detriment."  <u>Id.</u> at 4991.

The EAJA contains two separate and distinct sections upon which a court may base an award of attorneys' fees.  <u>See Kerin v.</u>

-2-

United States Postal Service, 218 F.3d 185, 189 (2d Cir. 2000);

Wells v. Bowen, 855 F.2d 37, 46 (2d Cir. 1988).  First, 28 U.S.C.

§ 2412(d)(1)(A) states that

> [e]xcept as otherwise specifically provided by statute,
> a court shall award to a prevailing party other than
> the United States fees and other expenses, in addition
> to any costs awarded pursuant to subsection (a),
> incurred by that party in any civil action (other than
> cases sounding in tort), including proceedings for
> judicial review of agency action, brought by or against
> the United States in any court having jurisdiction of
> that action, unless the court finds that the position
> of the United States was substantially justified or
> that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).  This subsection serves a dual

purpose: it waives the sovereign immunity of the United States to

allow recovery of attorneys' fees; and it provides a basis for

recovery of such fees to individuals or entities that qualify.

Second, 28 U.S.C. § 2412(b) provides as follows:

> [u]nless expressly prohibited by statute, a court may
> award reasonable fees and expenses of attorneys, in
> addition to the costs which may be awarded pursuant to
> subsection (a), to the prevailing party in any civil
> action brought by or against the United States or any
> agency or any official of the United States acting in
> his or her official capacity in any court having
> jurisdiction of such action.  The United States shall
> be liable for such fees and expenses to the same extent
> that any other party would be liable under the common
> law or under the terms of any statute which
> specifically provides for such an award.

28 U.S.C. § 2412(b).  Like subsection (d), subsection (b)

contains a waiver of the United States' sovereign immunity, see

U.S. v. One Parcel of Property Located at 414 Kings Highway, No.

5:91cv158(EBB), 1999 WL 301700, at *6 (D. Conn. May 10, 1999),

-3-

but, unlike subsection (d), subsection (b) does not provide a basis for the recovery of attorney's fees; 28 U.S.C. § 2412(b) "specifically incorporates the common law with respect to awards of attorney's fees, and effectively codifies the common law exceptions to the traditional American rule that each party will ordinarily bear its own fees and costs." Kerin, 218 F.3d at 190.

## A. ELIGIBILITY

Plaintiffs seek an award of attorney's fees pursuant to subsection (d). "[A]ttorney's fees under the EAJA must be awarded to the prevailing non-government party unless the court finds that the position of the United States in the pertinent litigation to have been 'substantially justified.'" Federal Election Com'n v. Political Contributions Data, Inc., 995 F.2d 383, 386 (2d Cir. 1993). Because plaintiffs have prevailed in this litigation on at least one substantial claim, the sole remaining issue governing plaintiffs' eligibility to recover attorneys' fees is whether the Secretary's position was "substantially justified." "To justify such a finding, the government must show that its position, both administratively and before the courts, had a reasonable basis in both law and fact." Id.; see Kerin, 218 F.3d at 189. "The government has the burden of demonstrating substantial justification." Id.

This inquiry is difficult under the present circumstances, where plaintiffs have enjoyed partial success. Specifically,

-4-

because the court did not award certain relief that plaintiffs requested, the Secretary's position must therefore have been substantially justified to at least some degree.  The court must therefore determine the appropriate standard for judging the Secretary's conduct.

"Any given civil action can have numerous phases.  While the parties' postures on individual matters may be more or less justified, the EAJA-like other fee-shifting statutes-favors treating a case as an inclusive whole, rather than as atomized line-items."  Commissioner, I.N.S. v. Jean, 496 U.S. 154, 161-62 (1990).  The Court of Appeals for the Fourth Circuit has persuasively applied Jean as follows:

> when determining whether the government's position in a case is substantially justified, we look beyond the issue on which the petitioner prevailed to determine, from the totality of circumstances, whether the government acted reasonably in causing the litigation or in taking a stance during the litigation. In doing so, it is appropriate to consider the reasonable overall objectives of the government and the extent to which the alleged governmental misconduct departed from them.

Roanoke River Basin Ass'n v. Hudson, 991 F.2d 132, 139 (4th Cir. 1993).  As the Court of Appeals for the District of Columbia Circuit has cautioned, however,

> [w]hile we do not suggest that the substantial justification question can be determined without context, this does not mean that the context can be so 'holistic' as to allow the government's generally justifiable conduct to defeat the otherwise legitimate EAJA claim of a litigant who has succeeded in obtaining precisely the relief it prayed from the government

because of the substantially unjustified element under
litigation.

Air Transport Ass'n of Canada v. F.A.A., 156 F.3d 1329, 1332

(D.C. Cir. 1998); see Roanoke River Basin Ass'n, 991 F.2d at 140

("[A] broader government position that, considered in a vacuum,

would not be clearly egregious might still, in the overall

context of the case, constitute an unreasonable position because

of its impact.").

Because the Secretary's position regarding plaintiffs'
centerpiece claim, the provision of notice to recipients of home
health services, was not substantially justified, plaintiffs are
eligible to recover attorneys' fees.  To even the most detached
observer, the Secretary's failure to provide written notice to
plaintiffs and those in their position of the termination of
crucial health care services, and the Secretary's subsequent
defense of his inaction, were unreasonable.  The Secretary's duty
to provide notice of the termination of benefits and the process
by which this determination may be appealed is prescribed by
statute, see 42 U.S.C. § 1395bbb & 1395ff, and the fact that the
Secretary is responsible for the Home Health Agencies' ("HHA")
actions in this regard is also clear under established legal
precedent and common sense.  Further, the evidence submitted
reveals the disastrous impact of the Secretary's failure to
provide notice: an indeterminate number of beneficiaries were
unaware of the right to appeal the termination of Medicare

benefits and were therefore forced to accept an HHA's untested
judgment and rendered unable to avail themselves of an appeal
process yielding a yearly beneficiary success rate of between
57.2% and 34.9% for the years 1994 through 1998.   Although there
was some legitimate dispute regarding the precise contours of the
Secretary's obligation, which the Court of Appeals ultimately
resolved in plaintiffs' favor, this dispute did not justify the
Secretary's declining to provide notice in circumstances not
subject to dispute.   Plaintiffs' request for notice, in this
court's opinion, defined this lawsuit, and, as such, the
Secretary's inability to reasonably meet plaintiffs' request
defined his position in this lawsuit.   Plaintiffs are therefore
eligible to recover attorneys' fees.

                              B. FEE AWARD

     The EAJA operates under the familiar principle that
attorney's fees awards should be determined by multiplying the
number of hours worked by a reasonable hourly rate.   See 28
U.S.C. § 2412(d)(1)(B); Hensley v. Eckerhart, 461 U.S. 424, 433
(1983).   With respect to fee awards under subsection (d), the
EAJA provides the following:

> [t]he amount of fees awarded under this subsection
> shall be based upon prevailing market rates for the
> kind and quality of the services furnished, except that
> . . . attorney fees shall not be awarded in excess of
> $125 per hour unless the court determines that an
> increase in the cost of living or a special factor,
> such as the limited availability of qualified attorneys
> for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A).  Once the court has determined the appropriate hourly rate, the court must then determine whether the resulting award is reasonable.  See Hensley, 461 U.S. at 438-40.

This court finds, for the same reasons cited by Judge Underhill in Connecticut State Department of Social Services, et al. v. Thompson, 289 F. Supp. 2d 198, 203-05 (D. Conn. 2003), that plaintiffs' counsel qualifies for an enhanced rate of compensation under 28 U.S.C. § 2412(d)(2)(A).  This court agrees that "specialized expertise in a particular area of law" is a special factor justifying an enhanced rate of compensation. Conn. State Dept. of Social Services, 289 F. Supp. 2d at 204. Further, this court adopts the following analysis as equally applicable in this case:

> [i]n the instant case, the litigation required lawyers
> with expertise in the statutory and regulatory scheme
> governing the provision of Medicare benefits. The
> plaintiffs were represented by attorneys employed by
> the Center for Medicare Advocacy ("the Center") in
> Willimantic, Connecticut.  The Center is "a private,
> non-profit organization which provides education,
> advocacy, and legal assistance" to Medicare
> beneficiaries. Center for Medicare Advocacy Website,
> available at http://www.medicareadvocacy.org (last
> visited October 22, 2003). Having litigated various
> actions challenging provisions of the Medicare statute
> and regulations, the Center's attorneys had extensive
> knowledge of the statutory and regulatory scheme. Such
> knowledge goes far beyond the scope of the general
> legal acumen expected of a competent attorney handling
> federal litigation.  Indeed, the "[e]xpertise and
> skills that they developed are in many ways akin to
> those developed by a patent lawyer: expertise with a
> complex statutory scheme; familiarity and credibility

-8-

with a particular agency; and understanding of the
needs of a particular class of clients-in this case,
the elderly-and of how those needs could best be met
under the existing statute and regulations." <u>Pirus v.
Bowen</u>, 869 F.2d 536, 541 (9th Cir. 1989).

In addition to the fact that the plaintiffs' attorneys
possessed specialized expertise in the area of Medicare
law, the nature of this litigation was unusually
complex. The plaintiffs' attorneys dealt with difficult
procedural issues such as identifying and certifying a
plaintiff class of Medicare beneficiaries, coordinating
a lengthy discovery effort, and preparing dispositive
motions based on findings culled from the discovery
process. Substantively, the issues presented throughout
the litigation were not straightforward or rudimentary,
<u>see Stockton v. Shalala</u>, 36 F.3d 49, 50 (8th Cir. 1994)
(concluding that special factor enhancement is not
justified in a "straightforward social security
disability case"), but rather, were "particularly
difficult [and] complex." <u>Id.</u> It was clear throughout
the litigation process that the plaintiffs' attorneys'
specialized expertise in this arena was essential to
the effective handling of the case and allowed the case
to progress in an efficient fashion. Accordingly, it is
entirely appropriate that the special factor exception
to the statutory cap be employed to reflect the
attorneys' considerable expertise in the area of
Medicare benefits law.

<u>Id.</u> at 204-05.  Enhancing the hourly rate based upon an

attorney's unique proficiency in a particular area of the law

recognizes two facts.  First, knowledgeable attorneys can pursue

a case with efficiency, which ultimately reduces costs and fees.

Second, uninitiated attorneys are reluctant to take on the burden

of becoming familiar with a complex area of the law with little

or no promise of renumeration.  Indeed, without the benefit of

significant knowledge of the actual process at issue, the legal

issues and arguments would be impossible to efficiently identify

and frame in order to prevail.  Therefore, the court finds that plaintiffs' attorneys should be compensated at prevailing market rates.

The court finds that the maximum hourly rate at which plaintiffs' attorneys should be compensated is $300 per hour. Although plaintiffs have requested that the maximum rate be set at $325, and have submitted evidence in support of this request indicating that $325 is an acceptable rate of compensation for the work plaintiffs' counsel performed, the court notes that other judges within this district have found $275 to be the prevailing market rate.  According to this court's understanding of the prevailing rates within this district, as aided by the parties' submissions and review of the applicable caselaw, the court finds that $300 is the most appropriate maximum rate of compensation for the specialized work done by plaintiffs' counsel in this case.  All other hourly rates suggested by plaintiffs' counsel should therefore be reduced by 7.69%, and rounded up to the next dollar, as well.

The Secretary argues that plaintiffs' request should be reduced to accurately reflect the degree of success plaintiffs achieved.  Specifically, the Secretary contends that, although plaintiffs' claim that the recipients of home health services are entitled, by federal statute, to notice of the HHA's termination of these services for any reason and notice of the procedure for

-10-

appealing the termination of services was ultimately successful, plaintiffs' claim that recipients of home health services are entitled, by way of the Fifth Amendment to the U.S. Constitution, to a hearing prior to the termination of these services was not successful at any level.  The Secretary contends that the court should reduce the ultimate fee award as follows: (1) reduce all attorneys' fees for work performed prior to February 11, 2000 by 33%; (2) reduce all attorneys' fees for work performed thereafter by 50%; and (3) disallow all requests for the award of attorneys' fees incurred in drafting plaintiffs' petition for rehearing in the Court of Appeals.

A reduction in the ultimate award of attorneys' fees is necessary to avoid unreasonably compensating plaintiffs' counsel for time spent pursuing unsuccessful claims.  In reaching this conclusion the court does not minimize the gravity of plaintiffs' success on their notice claim, or the importance of this claim to the litigation as a whole; rather, the court must acknowledge the fact that plaintiffs spent a great deal of time pursuing a distinct and unsuccessful claim.  Although the two claims shared a common background and, in part, were based upon the Fifth Amendment, the claims are legally distinct.  Placing aside the fact that the court's ultimate decision regarding the claim for adequate notice was based upon a statute, and not the Fifth Amendment, the court was required to independently analyze

-11-

whether the Fifth Amendment required both notice and a pre-
deprivation hearing. In this case, compensating plaintiffs for
time their counsel spent pursuing pre-deprivation hearings would
be unreasonable.  See Hensley, 461 U.S. at 440 ("[W]here the
plaintiff achieved only limited success, the district court
should award only that amount of fees that is reasonable in
relation to the results obtained.").

Plaintiffs' attorneys' fee award should be reduced as
follows: (1) reduce all attorneys' fees for work performed prior
to February 11, 2000 by 25%; (2) reduce all attorneys' fees for
work performed after February 11, 2000 and prior to September 21,
2001 by 33%; (3) reduce all attorneys' fees for work performed
after September 21, 2001 through the entry of judgment by 50%;
(4) disallow requests for attorneys' fees incurred in
unsuccessfully seeking a rehearing in the Court of Appeals; and
(5) allow all fees incurred in bringing the instant motion.  The
court agrees in principle with the Secretary in that plaintiffs'
attorneys spent much of their time after February 11, 2000, the
date of Judge Smith's decision on the first motions for summary
judgment, pursuing their claim for pre-deprivation hearings.  The
Secretary, however, does not properly account for the additional
analysis of Congress' and the Secretary's actions taken in the
time between the filing of the two rounds of motions, which was
necessary for preparing the second motions for summary judgment

-12-

as to both claims.  Also, by suggesting a 33% reduction in fees incurred prior to February 11, 2000, the Secretary underestimates the effort involved in constructing a class and laying the groundwork for proceeding with this lawsuit.  An ultimate reduction in the manner set forth herein most accurately reflects the degree of success obtained by plaintiffs.

The Secretary's other arguments in favor of further reductions are not substantial.  Plaintiffs' overall reduction of 5% to compensate for duplicative efforts and other minor deficiencies in the time records is reasonable.  The court also adopts the parties' compromise that travel time be compensated at one-half the proper rate.  Plaintiffs shall recover the attorneys' fees incurred in filing and briefing the instant motion.  Plaintiffs shall also recover the costs claimed.

## II. CONCLUSION

Plaintiffs' motion for attorneys' fees and costs is **GRANTED in part** and **DENIED in part** as set forth herein.  Plaintiffs' motion for costs is **GRANTED.**  Plaintiffs shall submit a proposed judgment setting forth the amount of the award per this court's instructions set forth herein and the calculations in support thereof on or before **November 14, 2005.**

-13-

**IT IS SO ORDERED** at Hartford, Connecticut, this 26th day of October, 2005.

                                        **/s/DJS**
                    _____
                              **DOMINIC J. SQUATRITO**
                         **UNITED STATES DISTRICT JUDGE**

-14-